IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

MARKELL J. MOORE,           )
                            )
              Petitioner,   )
                            )
       vs.                  )        No. 1:19-CV-218 SNLJ
                            )
UNITED STATES OF AMERICA,   )
                            )
              Respondent.   )

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Markell J. Moore, a person in federal custody. On March 5, 2019, Moore plead guilty before this Court to the offense of Possession of Methamphetamine. On June 12, 2019, this Court sentenced Moore to the Bureau of Prisons for a term of 46 months. Moore's § 2255 motion, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## I.  FACTS

### A.  INDICTMENT

On January 18, 2018, Markell J. Moore (Moore) was charged by Indictment in the Eastern District of Missouri with one count of possession with intent to distribute methamphetamine in violation of Title 21, United States Code, Section

1

841(a)(1).   (DCD 1)   On February 15, 2018, Moore was charged by Superseding Indictment in the Eastern District of Missouri in Count I with possession with intent to distribute methamphetamine in violation of Title 21, United States Code, Section 841(a)(1), and in Count II with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. Section 924(c)(1)(A), and punishable under 18 U.S.C. § 924(c)(1)(A)(i).   (DCD 19)

## B. PLEA AGREEMENT AND GUILTY PLEA

On March 5, 2019, Moore executed a plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), wherein he agreed to plead guilty to Count I of the Indictment charging him with possession of methamphetamine with intent to distribute.   As part of the plea agreement, the Government agreed to move for the dismissal of Count II, possession of a firearm in furtherance of a drug trafficking crime, at the time of sentencing.   Moreover, the United States agreed that no further federal prosecution will be brought in this District relative to the defendant's possession or distribution of methamphetamine or possession of firearms on July 29, 2016, of which the Government is aware at this time.   In the Plea Agreement, the parties agreed that the Total Offense Level should be 23, and that the sentenced to be imposed was 46 months pursuant to Rule 11(c)(1)(C). (Plea Ag., pp. 1-2)

2

In the Plea Agreement, Moore agreed that he had committed the following

acts:

> On July 29, 2016, Poplar Bluff Officer Jason Morgan applied for and obtained a search warrant issued by the Circuit Court of Butler County, Missouri, to search defendant Markell Moore's residence located at 140 Fortitude Avenue in Poplar Bluff, Missouri. The search warrant was for controlled substances, and related items. During the execution of the search warrant, officers located and detained Moore. In his right front pants pocket officers found 27.76 grams of a mixture containing methamphetamine. Officers also located an additional 20.26 grams of a mixture containing methamphetamine in a lower drawer of a cabinet in the kitchen. Also seized from the kitchen area were two black digital scales and a spoon with residue on the kitchen table. Officers found on the kitchen table a FNH 5.7 x 28 caliber semiautomatic pistol in a holster, with its magazine and ammunition. The quantity of methamphetamine possessed by defendant Moore was consistent with an amount being held for distribution. As charged in Count I of the Indictment, on or about July 29, 2016, in Butler County, in the Eastern District of Missouri, defendant Moore knowingly possessed the quantity of methamphetamine found by the officers with the intent to distribute the methamphetamine to another person.

> On January 24, 2018, officers served the arrest warrant for defendant Moore for the indicted offense at Moore's residence in Poplar Bluff, Missouri. When Detective Corey Mitchell arrested Moore, he located a pistol on the bed next to Moore, and also found 3.53 grams of methamphetamine in his pants pocket located on Moore's side of the bed. Moore admitted to the officers that the clothes on that side of the bed were his.

(Plea Ag., pp. 3-4)

On March 5, 2019, Moore pled guilty to Count I of the Indictment, charging

him with possession of methamphetamine with intent to distribute. (PSR, ¶ 1,

DCD 18, 66)[1]

On March 5, 2019, Moore appeared with his attorney and pled guilty to Count I of the Indictment.  In his plea agreement, Moore acknowledged that he had "voluntarily entered into both the plea agreement and guilty plea," and that "[he], is in fact, guilty." (Plea Ag. p. 9)   Under the Plea Agreement, Moore acknowledged that his base offense level was "24, as found in Section 2D1.1(c)(8). The parties agree that the quantity of mixture or substance containing methamphetamine for which the defendant is accountable, including relevant conduct, is more than fifty grams, but less than 200 grams." (Plea Ag. p. 4) Moore also agreed that, pursuant to the United States Sentencing Guidelines (U.S.S.G.), one Specific Offense Characteristic applied:

> **2** levels should be added pursuant to Section 2D1.1(b)(1), because a dangerous weapon was possessed.   The parties agree that no other specific offense characteristics apply.

(Plea Ag., p. 4)

Relative to Chapter 3 Adjustments, it was also agreed that Moore should receive three levels for acceptance of responsibility pursuant to Section 3E1.1 (a)

---

[1] 1 References to motions and rulings are to the district court docket number in Case 1:18 CR 8 SNLJ for such motion, such as (DCD____, p. _ ), references to the Plea Stipulation (DCD 67) are (Plea Ag., p._____); references to the Presentence Report (DCD 71) are (PSR, ¶_____); references to the Change of Plea Hearing transcript (DCD 84) are (Plea Tr., p._____); and references to the Sentencing Transcript (DCD 85) are (S. Tr., p. ).

and (b).  (*Id.* at p. 5)

The Plea Agreement noted that "[t]he defendant has been fully apprised by defense counsel of [his] rights concerning appeal and fully understands the right to appeal the sentence under Title 18 U.S.C. § 3742." (Plea Ag. p. 9)  The parties waived all rights to appeal non-jurisdictional, non-sentencing issues, including any issues related to pretrial motions, discovery and the guilty plea.  (Plea Ag. p. 5, Plea Tr. pp. 10)As to Sentencing Issues, Moore agreed that "[I]n the event the Court accepts the plea and sentences the defendant to a term of imprisonment of 46 months pursuant to the sentencing agreement in paragraph 2, then, as part of this agreement, the parties hereby waive all rights to appeal all sentencing issues." (Plea Ag. p. 6; Plea Tr. p. 10) As for post-conviction motions, Moore agreed "to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." (Plea Ag. p. 6)

During his change of plea hearing, when asked if he was satisfied with the way his lawyer had handled his case, Moore replied "Yes, sir."   (Plea Tr. 5) Moore acknowledged to the Court that his lawyer had investigated the case to his satisfaction.   When asked if Mr. Wilson had done everything he had asked him to do, Moore responded, "Yes, sir."  (Plea Tr. 5-6)   When asked if he had any

"gripes or complaints whatsoever," Moore responded, "No, sir." (Plea Tr. 6)   In

the Plea Agreement, Moore represented that he was satisfied with the

representation he had received from his lawyer.

> The defendant is fully satisfied with the representation received
> from defense counsel.   The defendant has reviewed the government's
> evidence and discussed the government's case and all possible
> defenses and defense witnesses with defense counsel.   Defense
> counsel has completely and satisfactorily explored all areas which the
> defendant has requested relative to the government's case and any
> defenses.

(Plea Ag. 9)

Moore also indicated that he had read the Plea Agreement, had gone over

it in detail with his attorney, that his attorney had explained the contents of the

agreement in detail to him, and that he understood the agreement.   (Plea Tr. 7-8)

When asked if there was anything in the agreement that he did not understand,

Moore replied "No, sir."   (Plea Tr. 8)   This Court asked Moore "Have any

promises been made by anyone to get you to plead guilty other than the promises

set out in this agreement?"   (Plea Tr. 8) Moore replied, "No, sir."

In the Plea Agreement, Moore also agreed "to waive all rights to contest the

conviction or sentence in any post-conviction proceeding, including one pursuant

to Title 28, United States Code, Section 2255, except for claims of prosecutorial

misconduct or ineffective assistance of counsel."   (Plea Ag. 9-10)

6

During the plea hearing, the Court asked "the prosecutor to summarize the evidence the Government would prove if the case were to go to trial." (Plea Tr. p. 12) In response, the prosecutor recited primarily the facts set forth in the Plea Agreement that were stipulated to by Moore. When Moore was asked by the Court if he "heard the statements from the prosecutor" and was "everything he said true and correct," Moore replied "Yes, sir" to both questions. When this Court asked, "Do you admit that you did all those acts he described?", Moore replied "Yes, sir." (Plea Tr. p. 14) Moore answered affirmatively when asked by the Court that there was no question about him doing the acts described, and that he had read all the facts in the Plea Agreement on pages 3 and 4, and that all the facts were true. (Plea Tr. 15)

## C. THE PRESENTENCE REPORT

The United States Probation Office prepared a Presentence Investigation Report (PSR). As indicated in the Offense Conduct section of the PSR, paragraphs 13-17, on July 29, 2016, in Poplar Bluff, Missouri, Moore, was found in possession of over 48 grams of methamphetamine with intent to distribute as charged in Count I, and a pistol on the kitchen counter, among other things.

### Offense Conduct

13.    According to investigative reports prepared by the Poplar Bluff, Missouri Police Department and the Missouri State Highway Patrol,

7

on July 29, 2016, in Butler County, Missouri, within the Eastern
District of Missouri, Markell J. Moore knowingly possessed with
intent to distribute, a mixture or substance containing
methamphetamine.

14.     Investigation into the instant offense began on February 12,
2015, when officers with the Poplar Bluff, Missouri Police
Department executed a search warrant at the residence of Markell
Moore, located at 1041 North 2nd Street in Poplar Bluff, Missouri.
The search warrant was based on a follow up investigation regarding
an AK-47 involved in a previous incident which was allegedly being
stored at Moore's residence. A search of the residence located the
following items: a Glock, Model: 27, .40 caliber pistol; five Glock .40
caliber magazines; a marijuana smoking bong; a set of digital scales; a
marijuana smoking pipe; a plastic bag containing marijuana; a
quantity of lose marijuana; 53 rounds of .40 caliber ammunition; and
two cellular telephones. Investigation determined Moore purchased
the pistol from a local gun store and smoked marijuana on a daily
basis. Investigators located a picture on Moore's cellular telephone of
his Glock pistol along with an AK-47 matching the description of the
one used in the previous incident which lead to the search warrant of
Moore's residence.

15.     On July 29, 2016, officers with the Poplar Bluff, Missouri
Police Department executed a search warrant at the residence of
Markell Moore, located at 140 Fortitude Avenue in Poplar Bluff,
Missouri. The search warrant was based on information that Markell
Moore and Dwight Usry were distributing methamphetamine and that
controlled substances would be located at Moore's residence. Moore
and Hanna Simmons were located within the residence and detained.
The search located the following items: a plastic bag containing 27.76
grams of methamphetamine from Moore's pants pocket; $5,239 in
United States currency from Moore's pants pocket; an FNH 5.7 x 28
pistol in a holster, with its magazine and a quantity of ammunition on
the kitchen counter; four digital scales; a bag containing 20.26 grams
of methamphetamine in a kitchen drawer; a bag containing 2.62 grams
of methamphetamine on a shelf in a bedroom; various drug
paraphernalia; two cellular telephones; an FNC gun case with four

8

magazines within a closet; an FNC firearm magazine within a bedroom; a Glock extended magazine within a safe; a partial box consisting of 38 rounds of .40 caliber ammunition; a GPS unit within a safe; and a notebook on the kitchen counter. Laboratory analysis confirmed the substances and their weights.

16.    On January 24, 2018, officers served an arrest warrant for Markell Moore at Moore's residence in Poplar Bluff, Missouri. When officers arrested Moore, they located a pistol on the bed next to Moore and also found 3.53 grams of methamphetamine in his pants pocket located on the side of Moore's bed. Investigation determined the clothes on that side of the bed were the defendant's.

17.    In summary, on July 29, 2016, and January 24, 2018, the defendant was found in possession of at least 54.17 grams of methamphetamine with intent to distribute the drugs along with firearms in furtherance of his drug trafficking.

(PSR, ¶¶s 13-17)

**Offense Level Computation**

Moore's base offense level for 54.17 grams of methamphetamine, which was at least 50 grams but less than 200 grams, was 24, pursuant to USSG §2D1.1(c)(8). (PSR ¶ 24) As for specific offense characteristics, two levels were added because Moore "possessed a firearm during the commission of the offense" pursuant to USSG §2D1.1(b)(1). (PSR ¶ 25). After a three level reduction for acceptance of responsibility, Moore's total offense level was 23. (PSR, ¶¶ 31-33)

**Criminal History**

9

Moore was convicted of the misdemeanor of Unlawful Use of Drug Paraphernalia in the Circuit Court of Butler County, Missouri, on February 12, 2015.   Moore had no felony convictions.   His criminal history score was one, and his criminal history category was I.   (PSR, ¶¶ 37, 39)

**Guideline Imprisonment Range**

Based on a total offense level of 23, and a criminal history category of I, Moore' guideline imprisonment range was 46 to 57 months.   (PSR, ¶ 65)

On June 3, 2019, Moore's counsel filed an acceptance to the Presentence Investigation Report, indicating that he had no objections on Moore's behalf to the Presentence Report.   (DCD 75)

**Sentencing Hearing**

A sentencing hearing was held before this Court on June 12, 2018.   During the hearing, this Court asked Moore if he had read the presentence report, and had gone over it in detail with his lawyer.   Moore replied, "Yes, sir." (S. Tr. p. 2)   Moore's counsel, Mr. Wilson, responded to the court that there were no "additions, corrections or objections by Defendant."   (S. Tr. 2)

This Court asked for the Government's recommendation.   The Government referenced the plea agreement under Rule 11(c)(1)(C), and requested that Moore be sentenced to the agreed upon sentence of 46 months. The Government also

10

referenced the agreement to dismiss Count II, which was a violation of 18 U.S.C.

§ 924(c). (S. Tr. 3) Mr. Wilson, on behalf of Moore, asked "the Court to abide by

and follow the agreement the parties have negotiated." (S. Tr. 4)  This Court then

referenced a benefit to Moore that Count II, had it not been dismissed, would have

generated a 60-month sentence consecutive to any sentence imposed for Count I.

(S. Tr. 4)

    This Court then addressed sentencing Moore and explained the

reasoning for imposing a sentence of 46 months imprisonment.

> Pursuant to the Sentencing Reform Act of 1984 and the provisions
> of Title 18 United States Code Section 3553(a) and all the factors
> thereunder, and also in view of the sentencing objectives of just
> punishment, general deterrence and incapacitation, it is the judgment of
> the Court that you, Markell J. Moore, is hereby committed to the
> custody of the Bureau of Prisons to be in prison for a term of 46 months.

(S.Tr., pp. 4-5)

## D. DIRECT APPEAL

    Moore did not file a direct appeal.    On the day of sentencing, Mr. Wilson

filed, on Moore's behalf, a Certification of Compliance with Local Rule 12.07(A),

indicating that he had explained to Moore his right to appeal, and that Moore had

not requested him to file a Notice of Appeal.    (DCD 80)

## E. MOTION FOR POST-CONVICTION RELIEF PURSUANT TO 28 U.S.C. §2255

On December 3, 2019, Moore timely filed a Motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.

In Ground One, alleged in ¶ 12(a), Moore alleges his counsel was ineffective for failing to "object or litigat (sic) the 2- level enhancement for a dangerous weapon. Counsel's inaction was prejudicial to movant because his due process rights were infringed in violation of the principles outlined in Blakely and Booker, Movant requests an evidentiary hearing on his ineffective counsel claim under due process of law." (Doc. 83, Doc. 3 present case, 2255 Motion, p. 4)

In Ground Two, alleged in ¶ 12(b), Moore stated "Movant requests for the Court to consider striking the 2-level weapon enhancement. Petitioner was coerced into the guilty plea because of counsels ineffectiveness." (sic) (Doc. 83, Doc. 3 present case, 2255 Motion, p. 5)

## II. APPLICABLE LAW

## A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF.

28 U.S.C. § 2255 provides in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

12

The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the Petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the Petitioner to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. Section 2255 provides a remedy for jurisdictional and constitutional errors. A defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or laws of the United States, the court lacked jurisdiction to impose a sentence, the sentence exceeded the maximum authorized by law, or the sentence is otherwise subject to collateral attack. *Sun Bear v. United States,* 644 F.3d 700, 704 (8th Cir. 2011), citing 28 U.S.C.A. § 2255(a).

In determining whether petitioner is entitled to an evidentiary hearing, the court must consider "[a] petitioner's allegations … as true and a hearing should be held unless they are contradicted by the record, inherently incredible, merely conclusions, or would not entitle the petitioner to relief." *Garcia v. United States*, 679 F.3d 1013, 1014 (8th Cir. 2012), citing *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently

13

results in a complete miscarriage of justice.'" *United States v. Addonizio,* 442
U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979), quoting *Hill v. United States*, 368 U.S.
424, 428, 82 S.Ct. 468, 471 (1962).   "[T]he court need not give weight to
"conclusory allegations, self-interested characterizations, discredited inventions, or
opprobrious epithets."   *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

"No hearing is required when the claim 'is inadequate on its face or if the
record affirmatively refutes the factual assertions upon which it is based.'"
*Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007), quoting *Shaw v.
United States,* 24 F.3d 1040, 1043 (8th Cir.1994).   *See also United States v.
Robinson*, 64 F.3d 403, 405 (8th Cir. 1995); *Engelen v. United States*, 68 F.3d 238,
240 (8th Cir. 1995) (2255 "petition can be dismissed without a hearing if . . . the
allegations cannot be accepted as true because they are contradicted by the record,
inherently incredible, or conclusions rather than statements of fact").

## B. EFFECT OF GUILTY PLEA ON APPEALABLE ISSUES.

A defendant who enters a plea of guilty thereby waives his right to request
relief under 28 U.S.C. § 2255 with the exception of those issues related to
jurisdiction.   "A valid guilty plea, however, 'operates as a waiver of all non-
jurisdictional defects or errors.'"   *United States v. Staples*, 435 F.3d 860, 864 (8th
Cir. 2006), quoting *United States v. Vaughan*, 13 F.3d 1186, 1188 (8th Cir.1994).

14

When the Petitioner delivers a guilty plea, the focus of a collateral attack

must remain "limited to the nature of counsel's advice and the voluntariness of the

plea." *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), quoting *Tollett v.*

*Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 1608 (1973). "[A] guilty plea

operates as a break in the chain of events . . . of the criminal process… [a criminal

defendant] may not thereafter raise independent claims relating to deprivation of

constitutional rights that" antedated the plea. *Tollett,* 411 U.S. at 267. Only the

voluntary and intelligent character of the guilty plea may be attacked. *Id.*

Although the *Tollett* decision concerned state prisoner habeas corpus petitions, the

Eighth Circuit has applied it to motions under Section 2255. *Bass*, 739 F.2d at

406.

## C. CLAIMS ALLEGING INEFFECTIVE ASSISTANCE OF COUNSEL.

To prevail on a claim alleging ineffective assistance of counsel, the

Petitioner must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668,

104 S.Ct. 2052 (1984). Under *Strickland*, the Petitioner must first show that the

counsel's performance was deficient. *Id.* at 687. This requires the Petitioner to

show "that counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the

Petitioner must demonstrate that the deficient performance prejudiced the defense

15

so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*
The Petitioner "must show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been
different. A reasonable probability is a probability sufficient to undermine
confidence in the outcome." *Id.* at 694.

The Eighth Circuit has described the two-fold test as follows: (1) "counsel's
representation fell below an objective standard of reasonableness;" and (2) "but for
this ineffective assistance, there is a reasonable probability that the outcome of the
trial would have been different." *Rogers v. United States,* 1 F.3d 697, 700 (8th
Cir. 1993*)* (quotations omitted).    The Eighth Circuit has also described the
*Strickland* test as follows: "whether counsel's performance was in fact deficient
and, if so, whether the defendant was prejudiced by the inadequate representation.
If we can answer 'no' to either question, then we need not address the other part of
the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the "court must indulge in a strong
presumption that counsel's conduct falls within the wide range of reasonable
professional assistance." *Strickland*, 466 U.S. at 689.    Counsel's performance is
considered objectively, and gauged "whether it was reasonable 'under prevailing
professional norms' and 'considering all the circumstances.'"    *Fields*, 201 F.3d at

16

1027, quoting *Strickland*, 466 U.S. at 688.    A reviewing court's "scrutiny of

counsel's performance must be highly deferential."    *Strickland*, 466 U.S. at 689.

"'When assessing attorney performance, courts should avoid the distorting effects

of hindsight and try to evaluate counsel's conduct by looking at the circumstances

as they must have appeared to counsel at the time.'"    *Rodela-Aguilar v. United*

*States,* 596 F.3d 457, 461 (8th Cir. 2010), quoting *United States v. Staples,* 410

F.3d 484, 488 (8th Cir. 2005).

## D.    ALLEGATIONS OF ERROR IN APPLYING GUIDELINES NOT COGNIZABLE IN PROCEEDINGS FOR POST-CONVICTION RELIEF UNDER § 2255

The general rule is "that § 2255 was intended to afford federal prisoners

remedy identical in scope to federal habeas corpus." *Davis v. United States,* 417

U.S. 333, 343, 94 S.Ct. 2298, 2304 (1974).    Like habeas corpus, this remedy

"does not encompass all claimed errors in conviction and sentencing." *United*

*States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979).    It provides a

remedy for jurisdictional and constitutional errors, neither of which is at issue here.

Moore claims merely an error in the application of a Sentencing Guideline to his

case.    His claim does not involve the legal range of punishment or a violation of

his Constitutional rights.    Beyond that, the permissible scope of a § 2255

collateral attack on a final conviction or sentence is severely limited; "an error of

17

law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.,* quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962).

These principles are reflected in the text of § 2255, which the Supreme Court described as "somewhat lacking in precision" in *Davis,* 417 U.S. at 343, 94 S.Ct. 2298, 2304.  A § 2255 motion may be filed by a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." § 2255(a). The court shall grant appropriate relief if it finds "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." § 2255(b).

Applying these principles, the 8th Circuit has consistently held "that ordinary questions of guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper § 2255 claim."  *Auman v. United States,*

18

67 F.3d 157, 161 (8th Cir. 1995).

## III. DISCUSSION

## A. ALLEGATIONS OF ERROR IN APPLYING GUIDELINES NOT COGNIZABLE IN PROCEEDINGS FOR POST-CONVICTION RELIEF UNDER § 2255

Moore's claims are not cognizable in a proceeding for post-conviction relief pursuant to § 2255.   For his claim of guideline errors that he should not have been subjected to a two-level enhancement pursuant to Section 2D1.1(b)(1), because a dangerous weapon was possessed, and that his counsel was ineffective for failing to successfully contest this enhancement, Moore's claim lacks merit.   In his plea agreement, Moore specifically agreed that two levels should be added as a Specific Offense Characteristic, pursuant to Section 2D1.1(b)(1), because he possessed a dangerous weapon during his commission of possessing methamphetamine with intent to distribute.

Moore claims that the relevant circumstances surrounding his offense do not support his two-level enhancement of possession of a dangerous weapon. However, Moore cannot assert this claim in a § 2255 Petition, and it is not cognizable in a § 2255 petition.

## B. MOORE'S COUNSEL WAS NOT INEFFECTIVE IN THAT MR. WILSON PROVIDED MORE THAN ADEQUATE AND VERY EFFECTIVE REPRESENTATION DURING ALL STAGES OF MOORE' CASE, INCLUDING DURING THE PRETRIAL STAGE OF

19

## THE PROCEEDINGS, PLEA NEGOTIATIONS, AND SENTENCING

Moore's counsel was not ineffective.   Moore complains that he was denied

effective assistance of counsel because his counsel failed to successfully contest

the two-level enhancement because a dangerous weapon was possessed.   To the

contrary, Mr. Wilson, through preparation and very effective advocacy, managed

to negotiate a plea agreement with the Government wherein the Government

agreed to dismiss Count II, charging Moore with possessing a firearm in

furtherance of a drug trafficking activity, if Moore pled guilty to Count I under

Rule 11(c)(1)(C), and agreed to a fixed term of imprisonment of 46 months.   This

agreement helped Moore avoid a far more onerous penalty, if convicted at trial, of

a five year sentence, which would have been run consecutively to his sentence he

would have received on Count I, if he had been convicted of both Counts I and II.

The facts, as stipulated by Moore in the Plea Agreement, and recited in the

Presentence Report, supported Moore's conviction of the offense charged in Count

II, had Moore proceeded to trial.   Those facts also supported the stipulated two-

level enhancement for possession of a dangerous weapon in connection with

Moore's conviction for possession of methamphetamine with intent to distribute.

Section 2D1.1(b)(1) states that "[I]f a dangerous weapon (including a firearm) is

possessed, increase by two levels."   Application Note 11 for Section 2D1.1(b)(1)

20

provides:

> The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

As stated by the Eighth Circuit in *United States v. Anderson*, 618 F.3d 873, 879-80 (8th Cir. 2010),

> To prove that the firearm was "possessed," the government need not prove ownership of either the weapon or the premises on which it is found for a § 2D1.1(b)(1) enhancement to apply. *United States v. Payne,* 81 F.3d 759, 762 (8th Cir.1996); *see also United States v. Weaver,* 906 F.2d 359, 360 (8th Cir.1990). Also, "[i]t is not necessary that an individual be observed using the weapon, and either actual or constructive possession is sufficient, i.e., the individual must have exercised 'ownership, dominion, or control' either over the firearm or the premises on which it is found." *Payne,* 81 F.3d at 762. We have found constructive possession where police found weapons after a defendant's arrest in a storage facility rented in the name of someone other than the defendant. *United States v. Montanye,* 962 F.2d 1332, 1347-48 (8th Cir.1992).

Under *Strickland*, for Moore to be successful on his claim of ineffective assistance of counsel, Moore must first show that his counsel's performance was deficient.   Moore has not shown that his counsel made any errors that resulted in Moore receiving the two-level enhancement for possession of a dangerous weapon. That enhancement was referenced and stipulated to in the plea agreement.   Moore fails to show "that counsel made errors so serious that counsel was not functioning

21

as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Secondly, even if Moore established inadequate representation by Mr. Wilson, Moore has failed to "show that there is a reasonable probability that, but for counsel's unprofessional errors," he would have received a lower sentence. *Id.* at 694. Moore completely fails to show how he was prejudiced by any claimed inadequacies of his counsel. Moore does not, and cannot, establish that he would have received a lower sentence had his counsel contested the two-level enhancement for possession of a dangerous weapon. Moore's guideline enhancement for possession of a dangerous weapon is not the fault of his counsel. The enhancement is supported by the facts set forth in the plea agreement and the presentence report.

In addition, there is no showing of prejudice because there is no reasonable probability that Moore' guideline calculation would have excluded the two-level enhancement for possession of a dangerous weapon. The enhancement applied unless "it was clearly improbable that the weapon was connected with the offense." The facts set forth in the plea agreement make clear Moore's possession of the pistol found on the kitchen table was connected to the offense to which Moore pled guilty as charged in Count I of the Indictment, possession of methamphetamine with the intent to distribute it.

22

On July 29, 2016, Poplar Bluff Officer Jason Morgan applied for and obtained a search warrant issued by the Circuit Court of Butler County, Missouri, to search defendant Markell Moore's residence located at 140 Fortitude Avenue in Poplar Bluff, Missouri.   The search warrant was for controlled substances, and related items. During the execution of the search warrant, officers located and detained Moore.   In his right front pants pocket officers found 27.76 grams of a mixture containing methamphetamine.   Officers also located an additional 20.26 grams of a mixture containing methamphetamine in a lower drawer of a cabinet in the kitchen.   Also seized from the kitchen area were two black digital scales and a spoon with residue on the kitchen table.   Officers found on the kitchen table a FNH 5.7 x 28 caliber semiautomatic pistol in a holster, with its magazine and ammunition.   The quantity of methamphetamine possessed by defendant Moore was consistent with an amount being held for distribution.   As charged in Count I of the Indictment, on or about July 29, 2016, in Butler County, in the Eastern District of Missouri, defendant Moore knowingly possessed the quantity of methamphetamine found by the officers with the intent to distribute the methamphetamine to another person.

On January 24, 2018, officers served the arrest warrant for defendant Moore for the indicted offense at Moore's residence in Poplar Bluff, Missouri.   When Detective Corey Mitchell arrested Moore, he located a pistol on the bed next to Moore, and also found 3.53 grams of methamphetamine in his pants pocket located on Moore's side of the bed.   Moore admitted to the officers that the clothes on that side of the bed were his.

(Plea Ag., pp. 3-4)

Moore's pistol was found on the kitchen table in close proximity to over 20 grams of methamphetamine that was found in one of the kitchen cabinets, in addition to over 20 grams of methamphetamine that were found on Moore's person.

23

Accordingly, Moore's claims for ineffective assistance of counsel as stated in his Motion, are devoid of merit, are refuted by the record, and will be denied.

## IV. CONCLUSION

For the foregoing reasons, this Court denies Moore's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Moore has not made a substantial showing of the denial of a federal constitutional right.

Dated this __2\_\_ day of September, 2020.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE